IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ALLISON KORMAN, | ) | Civil Division |
| | ) | |
| Plaintiff, | ) | No. |
| v. | ) | |
| | ) | |
| SETTLERS HOSPITALITY GROUP, LLC, | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Defendant. | ) | |
| | ) | |

**COMPLAINT**

AND NOW COMES Plaintiff Allison Korman ("Plaintiff" or "Korman"), by and through her undersigned counsel, and brings this Complaint seeking legal and equitable relief for unlawful religious, disability and employment discrimination and retaliation, hostile work environment and wrongful termination against Defendant Settlers Hospitality Group, LLC ("Defendant" or "SHG") in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), the Americans with Disabilities Act of 1990 ("ADA"), and the ADA Amendments Act of 2008 ("ADAAA"), the Family and Medical Leave Act of 1993, 29 U.S.C. Section 2601 et. seq. ("FMLA"), and pendent state law claims arising under the provisions of the laws of this Commonwealth, to wit, the Pennsylvania Human Relations Act, 42 P.S. § 951, et seq. (hereinafter referred to as "PHRA"), stating as follows:

**JURISDICTION AND VENUE**

1. Jurisdiction is invoked pursuant to 28 U.S.C. §§ 1331, 1332 and 1391. This action is authorized and instituted pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"), ADA, ADAAA, FMLA and the PHRA.

1

2. The unlawful employment practices were committed by the Defendant in Hawley Pennsylvania, where Plaintiff worked for Defendant in or around Wayne County, Pennsylvania at two restaurants owned by SHG.  Therefore, the United States District Court for the Middle District of Pennsylvania is the proper venue for the action under 42 U.S.C. § 2000e-5(f) and 28 U.S.C. §1391(b).

3. On or about June 16, 2020, Defendant terminated Plaintiff's employment.  Thereafter, Plaintiff timely exhausted her administrative remedies by filing a charge on March 11, 2021 with the United States Equal Employment Opportunity Commission ("EEOC") at Charge No. 17F-2021-61174.  Plaintiff's Charge is incorporated by reference as if fully set forth herein.  On July 12, 2021, the EEOC mailed Plaintiff a Dismissal and Notice of Rights letter (the "Right to Sue" letter) advising her of the right to bring this action.  Plaintiff has filed the instant suit within 90 days of receipt of the Right to Sue letter.

4. Defendant is an employer within the meaning of Title VII, ADA, ADAAA, FMLA and PHRA, and Defendant employed the requisite number of employees at the time Plaintiff worked for SHG.

**PARTIES**

5. Plaintiff is a 40-year-old female individual who resides at 29 Hemlock Circle, West Lakeville, PA 18438.

6. At all relevant times hereto, Defendant was and is a Pennsylvania corporation and for-profit organization with its principal place of business located at 4 Main Avenue, Hawley, PA 18428.

**FACTS**

7. Plaintiff incorporates by reference the allegations contained in the foregoing paragraphs as though fully set forth herein at length.

8. Korman worked as a server for Settlers Hospitality Group at two of its restaurants, The Dock on Wallenpaupack and Glass/Ledges Hotel which are both in Hawley, PA, from 2014 until she was wrongfully terminated in June 2020.

9. Korman completed all job functions, roles and responsibilities of a server in at least a satisfactory manner, often exceeding expectations and having never received a negative performance evaluation, letter of concern or disciplinary action, other than the following retaliatory, silencing and chilling paperwork issued to Korman in direct response to her submission of complaints of religious discrimination and a hostile work environment to SHG:



10. Thus, SHG's response to complaints of ongoing religious discrimination and a hostile work environment was to remove her from the schedule at The Dock and force her to sign a "Terms of continued employment" agreement that she would cease and desist her submission of

discrimination complaints if she wanted to receive shifts at SHG's other restaurant in Hawley, PA - Glass wine bar.

11. As a single mother, Plaintiff had no other choice but to endure the religious discrimination, retaliation and hostile work environment which includes the following conduct during her employment with Defendant:

a. In 2016, the head chef and another member of the kitchen staff at The Dock would play recordings of Hitler, because Korman is Jewish and they are German, and draw swastikas on her drinking cups, eating orders and personal items;

b. Plaintiff asked the chef and other employee to stop such behavior; however, they refused;

c. The manager of The Dock witnessed this hostile work environment and Plaintiff complained to the manager as well about the anti-Semitic treatment; yet, SHG's response was to issue Korman a written warning and to advise her not to give orders to kitchen staff;

d. On June 19, 2016, SHG's manager, Craig Ehrhardt, removed Korman from The Dock's schedule because she continued to submit anti-Semitic complaints in the workplace;

e. SHG offered Plaintiff shifts at its other restaurant, Glass wine bar, only if she signed the agreement referenced in Paragraph 10 above essentially stating that further complaints of discrimination or hostile work environment would not be tolerated;

f. SHG management also advised Plaintiff that bringing up any additional past or current complaints of anti-Semitic behavior would be punishable by termination;

4

g. After the transfer from The Dock to Glass, SHG reduced her hours and eliminated the possibility of her obtaining fringe benefits such as health insurance;

h. In October 2018, a member of the kitchen staff, in furtherance of the hostile work environment to which SHG subjected Plaintiff, threw a frozen tomato at Korman's right eye resulting in two surgeries without proper time off to recover and the loss of vision in her right eye;

i. Plaintiff still requires a third surgery as a result of this incident, and SHG intentionally did not properly advise Plaintiff of her FMLA, disbility, or workers' compensation benefits rights;

j. In May 2020, Douglas Brigandi, SHG manager, directed Plaintiff to burn old mattresses stating, "You should feel comfortable burning old mattresses in the woods because hey, you're Jewish, right;" and

k. Korman complained again about the anti-Semitic behavior and she was fired in retaliation within one month.

12. In 2020, Plaintiff was directed to complete jobs (while in pre-operative care for oil tamponade and cataract removal) that she should not have done and that co-workers were not expected to perform who were not Jewish, had not complained about discrimination or a hostile work environment, had not filed for workers' compensation benefits, had not been entitled to FMLA benefits, and did not suffer from a disability (blindness) which SHG caused.

13. SHG employees and management continually made jokes and comments about Plaintiff burning furniture, mattresses and branches because she is Jewish.

5

14. Plaintiff even had to sweep mounds of fiberglass in a dirty cold warehouse owned by SHG, and SHG further directed her to lift stones and dig a path to build a walkway with the stones which she carried from the woods nearby.

15. These tasks are not acceptable for a waitress who is blind in one eye and in preoperative care.

16. Mr. Brigandi threatened Plaintiff stating that she could resign if she did not like doing the foregoing tasks despite her disability.

17. Plaintiff was abused and subjected to a hostile work environment to the point where SHG was hoping she would quit, as no other employees were subjected to such egregious anti-Semitic treatment or required to perform the foregoing horrific tasks.

18. The continuing violations doctrine covers SHG's illegal treatment since her initial complaints of religious discrimination and hostile work environment at The Dock, as the unlawful treatment continued:

   a. with the requirement that she sign a silencing agreement in 2016 in order to continue working at Glass;

   b. when she suffered a traumatic injury (blindness) at work in 2018 and was not properly advised of her workers' compensation (WC), disability or FMLA rights;

   c. when she was required two eye surgeries while employed with SHG, the second one on February 17, 2020, and SHG engaged in disability discrimination and retaliation intentionally failing to engage in the interactive process or provide reasonable accommodations;

   d. when she was forced to complete unspeakable, hard labor in 2020 in retaliation for complaining about religious discrimination and a hostile work environment

6

    multiple times during her employment with SHG, for suffering from the disability of blindness caused by a SHG employee, and for seeking WC and FMLA benefits; and

  e. when she was fired in direct retaliation for complaining again about derogatory comments made about her Jewish religion as she was inexplicably directed to burn mattresses in the woods.

19. As such, during her employment with SHG, Korman has been subjected to a hostile work environment, including negative comments and discriminatory and retaliatory treatment, and the refusal of SHG's leadership to treat her with the same courtesy and respect shown to those outside her protected classes.

20. SHG leadership and employees targeted, unfairly scrutinized and publicly humiliated Korman because of her religion, blindness, and complaints of discrimination and a hostile work environment.

21. Thus, SHG subjected Korman to egregious discrimination and treatment while she was employed, and when she pleaded in an effort for help and conciliation, SHG intentionally ignored her complaints and instead retaliated against her and fired her, causing Plaintiff irreparable harm and humiliation.

22. At all times relevant hereto, Defendant was Plaintiff's employer, and was an employer within the meaning of and subject to anti-discrimination and anti-retaliation statutes.

23. Plaintiff is in a protected class under Title VII, ADA, ADAAA, FMLA and PHRA at the time the acts of discrimination, retaliation and wrongful termination occurred.

24. At all relevant times hereto, Defendant acted or failed to act by and through its duly authorized agents, servants, and employees, who conducted themselves within the scope and course of their employment.

## COUNT I
## TITLE VII VIOLATION – RELIGIOUS DISCRIMINATION & RETALIATION

25. Plaintiff incorporates by reference the allegations contained in the foregoing paragraphs as though fully set forth herein at length.

26. The foregoing conduct, including forcing Plaintiff to listen to Hitler's recordings, drawing swastikas on her belongings, and requiring her to burn mattresses because she is Jewish and should not mind, constitutes religious discrimination.

27. Plaintiff complained to management about the forgoing religious discrimination and hostile work environment to which she was subjected because of her Jewish religion and was only met with retaliation, including but not limited to the requirement to transfer restaurants and sign a silencing agreement, a reduction in hours, and ultimately a wrongful termination.

28. At all times relevant, Defendant was an "employer" within the meaning of Section 701(b) of Title VII.

29. Plaintiff was subjected to a hostile work environment (HWE) and was intentionally discriminated and retaliated against based on her religion and in response to her complaints of religious discrimination/HWE, in violation of Title VII.

30. Moreover, the discriminatory conduct and harassment to which Plaintiff was subjected, as described above, based on her religion was severe, pervasive and regular.

31. The discriminatory and retaliatory conduct to which Plaintiff was subjected, as described above, has caused Plaintiff substantial harm, including but not limited to emotional

distress, mental anguish, anxiety, humiliation, embarrassment, pain and suffering, discomfort and inconvenience.

32. Defendant's failure to maintain a workplace free of discrimination and harassment and failure to take prompt remedial action to address the hostile work environment to which Plaintiff was subjected has caused Plaintiff to suffer emotional distress and loss of earnings.

33. The discriminatory conduct and retaliation to which Plaintiff was subjected, as described above, would have detrimentally affected a reasonable person in Plaintiff's position.

34. Defendant knew or should have known about the discriminatory conduct which Plaintiff was subjected and failed to take appropriate remedial action.

35. Defendant's failure to maintain a workplace free of discrimination and a failure to take prompt remedial action to address the hostile work environment to which Plaintiff was subjected was intentional, malicious and in reckless indifference to Plaintiff's protected federal rights.

36. As a result of Defendant's unlawful discrimination, Plaintiff has suffered damages asset forth herein.

37. Defendant's conduct described above had the purpose and effect of depriving Plaintiff of the rights enjoyed by individuals outside her protected class and, therefore, was in violation of Title VII and the PHRA.

38. As a direct and proximate result of the discrimination, disparate treatment, retaliation, hostile work environment and wrongful termination which Plaintiff suffered while employed by Defendant, Plaintiff has suffered not only tangible economic loss in the form of lost back pay and benefits and potential lost front pay and benefits, but also substantial emotional and physical distress, embarrassment and humiliation, and pain and suffering, and is entitled to

compensatory damages for these injuries, in addition to the tangible economic losses she has suffered and will continue to suffer.

WHEREFORE, Plaintiff seeks the damages set forth in the *ad damnum* clause of this Complaint, *infra.*

**COUNT II**
**DISCRIMINATION, RETALIATION & FAILURE TO ACCOMMODATE and ENGAGE IN INTERACTIVE PROCESS – ADA and ADAAA**

39. Plaintiff incorporates by reference the allegations contained in the foregoing paragraphs as though fully set forth herein at length.

40. Plaintiff is a "qualified individual with a disability" as that term is defined in the ADA and or ADAAA because she has, or had at all times relevant hereto, a physical impairment that substantially limited/limits one or more major life activities (i.e., blindness caused by SHG), or because she had a record of such impairment.

41. Plaintiff also is a "qualified individual with a disability" as that term is defined in the ADA and/or ADAAA because she was regarded as and/or perceived by Defendant and their agents as having a physical impairment that substantially limited/limits one or more major life activities including disabilities of severe arthritis and fibromyalgia.

42. SHG failed to engage in the interactive process or offer any reasonable accommodations when Plaintiff required two eye surgeries while employed by SHG after an employee threw a frozen tomato at her face.

43. Moreover, Plaintiff was ultimately fired in June 2020 in retaliation for suffering from the disability of blindness and requiring a second eye surgery in February 2020 and third surgery after the termination, despite the fact that SHG's conduct caused her blindness.

44.     SHG was aware that Plaintiff still required a third eye surgery at the time of her firing.

45.     As a result of Defendants' unlawful disability discrimination and retaliation, Plaintiff has suffered damages as set forth herein.[1]

WHEREFORE, Plaintiff seeks the damages set forth in the *ad damnum* clause of this Complaint, *infra*.

## COUNT III
## PHRA – DISCRIMINATION, RETALIATION and HOSTILE WORK ENVIRONMENT

46.     Plaintiff incorporates by reference the allegations contained in the foregoing paragraphs as though fully set forth herein at length

47.     This is an action arising under the provisions of the laws of the PHRA and this Honorable Court has, and should, exercise pendent jurisdiction over the same because the cause of action set forth in this COUNT III arises out of the same facts, events and circumstances as in the above COUNTS, and therefore judicial economy and fairness dictate that this COUNT III be brought in this same Complaint.

48.     At all times relevant, Defendant was an "employer" within the meaning of Section 954(b) of the PHRA.

---

[1] Plaintiff's instant complaint is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination. New claims are allowed if they amplify, clarify, or more clearly focus the allegations in the EEOC complaint. Plaintiff proceeded through the EEOC process pro se. The EEOC investigator who perfected her charge did not check the disability box. However, the charge referenced the fact that a SHG employee caused Plaintiff's disability of blindness by throwing a frozen tomato at her face. Moreover, Plaintiff states that she was subjected to disability discrimination in correspondence, dated July 4, 2022, to the EEOC submitted in rebuttal to SHG's position statement and she references the eye surgeries required as a result.

49. By engaging in the creation and fostering of a discriminatory, retaliatory and hostile work environment, Defendant violated Section 955(a) of the PHRA which prohibits discrimination based upon religion and disability with regard to the continuation and tenure of employment.

50. Plaintiff was subjected to a hostile work environment and was intentionally discriminated and retaliated against as well as wrongfully terminated based on her religion and disabilities, in violation of the PHRA.

51. The discriminatory retaliatory conduct and harassment to which Plaintiff was subjected, as described above, was pervasive, severe and regular.

52. The discrimination, retaliation and wrongful termination to which Plaintiff was subjected, as described above, has caused Plaintiff substantial harm, including but not limited to financial despair, emotional distress, mental anguish, anxiety, humiliation, embarrassment, pain and suffering, discomfort and inconvenience.

53. The discriminatory and retaliatory conduct to which Plaintiff was subjected, as described above, would have detrimentally affected a reasonable person in Plaintiff's position.

54. Defendant knew or should have known about the discriminatory and retaliatory conduct to which Plaintiff was subjected and failed to take appropriate remedial action.

55. Defendant's failure to maintain a workplace free of religious and disability discrimination and SHG's wrongful termination of Plaintiff constituted intentional, malicious and in reckless indifference to Plaintiff's protected state rights.

56. Plaintiff engaged in a protected activity as described by Section 955(d) of the PHRA, which includes opposing religious discrimination, requiring a reasonable accommodation based on her blindness and disability and the opposition of any practice forbidden by the PHRA.

57. Defendant was aware of Plaintiff's protected activities of opposing religious discrimination and requesting reasonable accommodations based on her disability.

58. Plaintiff suffered an adverse employment action in response to engaging in protected activities, in that Defendant fired Plaintiff in response.

59. Defendant's retaliatory conduct towards Plaintiff as a result of her engaging in protected activities remains a violation of the PHRA.

60. Defendant's retaliatory conduct toward Plaintiff was intentional, malicious and in reckless indifference to Plaintiff's protected state rights.

## COUNT IV
## FMLA, 29 U.S.C. §2615(a)(1), UNLAWFUL INTERFERENCE WITH, RESTRAINT AND DENIAL OF THE EXERCISE FMLA RIGHTS

61. Plaintiff incorporates by reference the allegations contained in the foregoing paragraphs as though fully set forth herein at length.

62. Plaintiff was an "eligible employee" as defined by the FMLA and within the meaning of FMLA, 29 U.S.C. §2611(2). Plaintiff also suffers from or more "serious health conditions," and she attempted to take FMLA leave for a serious health condition; thus, Plaintiff exercised her rights under the FMLA.

63. However, in June 2020 near the time of her wrongful termination, SHG management asked Plaintiff to sign an affidavit stating that she did not want to take FMLA leave.

64. SHG presented Plaintiff with this affidavit without properly explaining to Korman her eligibility for FMLA benefits and because SHG knew she required a third eye surgery.

65. The FMLA, 29 U.S.C. §2615(a)(2), precludes employers from discriminating and retaliating against employees who have exercised rights under the FMLA or are entitled to FMLA benefits.

66. SHG is a covered employer within the meaning of the FMLA, 29 U.S.C. §2611(4).

67. Plaintiff invoked her FMLA rights in the days leading up to her termination of employment by placing SHG on notice that she required leave protected under the FMLA and that she may seek to take that leave due to the necessary third eye surgery.

68. In response to Plaintiff invoking her FMLA rights and/or being entitled to FMLA benefits, SHG failed to discharge its employer obligations to Plaintiff under the FMLA by:

    a. failing to notify Plaintiff of Plaintiff's eligibility to take FMLA leave in violation of 29 C.F.R §825.300(b);

    b. failing to provide written notice to Plaintiff detailing Plaintiff's specific expectations and obligations under the FMLA and explaining any consequences of a failure to meet these obligations in violation of 29 C.F.R §825.300(c);

    c. failing to notify Plaintiff in writing of all requirements pertaining to SHG's consideration for approval of FMLA certifications of serious health conditions in violation of 29 C.F.R. §825.300(c) and 29 C.F.R. §825.305(c);

    d. failing to notify Plaintiff in writing whether or not SHG would designate Plaintiff's absence due to the eyer surgeries as FMLA leave in violation of 29 C.F.R. §825.300(d);

    e. failing to designate Plaintiff's requested leave as FMLA-qualifying leave in violation of 29 C.F.R. §825.301(e); and

    f. failing to adequately investigate whether the requested absences from work to be taken by Plaintiff were protected under the FMLA.

69. By failing to adequately discharge its employer obligations to Plaintiff under the FMLA, SHG interfered with, restrained, and denied Plaintiff's exercise of or attempt to exercise her rights under the FMLA.

70. SHG also failed to meet the above obligations under the FMLA when Plaintiff required her eye surgery in February 2020 when still employed by SHG.

14

71. Further, in June 2020, with full knowledge that Plaintiff intended to utilize eligible FMLA benefits in the future for the third eye surgery, SHG unlawfully discharged Plaintiff with the purpose and intention of precluding Plaintiff from exercising her FMLA rights.

72. SHG's conduct was in violation of the FMLA, 29 U.S.C. §2615.

73. SHG's violations of the FMLA were not in good faith and willful.

74. The fact that SHG management tried to coerce Korman into signing an affidavit stating that she was not seeking FMLA benefits, without ever explaining verbally or in writing her entitlement to FMLA rights, revels the willfulness of SHG's FMLA violations extending the statute of limitations to three years.

75. As a direct result of SHG's unlawful conduct, Plaintiff has suffered and will suffer injury and damages, including but not limited to, lost wages, lost benefits, and other lost compensation, actual monetary losses and interest on the same.

76. Because SHG's violations of the FMLA were not in good faith, Plaintiff is entitled to recover liquidated damages.

77. Plaintiff is entitled to recover attorneys' fees and costs.

WHEREFORE, Plaintiff seeks the damages set forth in the *ad damnum* clause of this Complaint, *infra*.

## DEMAND FOR JURY

WHEREFORE, Plaintiff demands judgment against Defendant, and damages in excess of $75,000 as follows:

a. That Plaintiff be awarded actual and consequential damages to make Plaintiff whole including back pay with prejudgment interest, front pay and compensation for lost benefits, in an amount to be proven at trial, and other affirmative relief necessary to eradicate the effects of Plaintiff's damages associated with Defendant's discrimination,

15

retaliation and wrongful termination of Plaintiff pursuant to Title VII, ADA, ADAAA, FMLA, and PHRA, plus interest;

b. That Plaintiff be awarded compensatory damages to compensate for all costs associated with the discrimination, retaliation, hostile work environment and wrongful termination including lost wages and any associated medical expenses;

c. That Plaintiff be awarded nominal damages;

d. That Plaintiff be awarded punitive damages in an amount sufficient to punish Defendant for its intentional, wanton and malicious conduct and to deter similar misconduct;

e. That Plaintiff be awarded the costs of this litigation, including reasonable attorney's fees; and

f. That Plaintiff be awarded such further relief as deemed to be just and proper.

Date:   October 7, 2022                                        Respectfully Submitted,

*/s/ Brian P. Benestad*
Brian P. Benestad, Esquire
Pa. I.D. 208857
HKM EMPLOYMENT ATTORNEYS LLP
220 Grant Street
Suite 401
Pittsburgh, PA  15219
412.485.0133
bbenestad@hkm.com

**JURY TRIAL DEMANDED**